IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAYMOND JAMES & ASSOCIATES, INC.,

    Plaintiff,

v.                                                              Case No.: _____

LOWE'S COMPANIES, INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff Raymond James & Associates, Inc. ("Raymond James") sues defendant Lowe's Companies, Inc. ("Lowe's") for breach of contract, and alternatively, for breach of the duty of good faith and fair dealing and unjust enrichment. In support, Raymond James states as follows:

### Parties, Jurisdiction, and Venue

1. Raymond James is a Florida corporation with its principal place of business in Florida.

2. Lowe's is a North Carolina corporation with its principal place of business in North Carolina.

3. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between the parties.

4. The Court may exercise personal jurisdiction over Lowe's because Lowe's breached a contract in this State by failing to perform acts required by the contract to be performed in this State. *See* Fla. Stat. § 48.193(1)(a)(7).

5. In addition, personal jurisdiction is proper because Raymond James's cause of action arises from Lowe's operating, conducting, engaging in, or carrying on a business or business venture in this State or otherwise having an office or agency in this State. *See* Fla. Stat. § 48.193(1)(a)(1). On information and belief, personal jurisdiction is also proper because Lowe's engaged in substantial and not isolated activity within this State. *See* Fla. Stat. § 48.193(2).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Raymond James's claim occurred in this judicial district.

7. In particular, venue is proper because payments under a contract are due and breach of the contract occurred within this judicial district.

**Factual Background**

8. Beginning in 2015, Raymond James offered investment banking services to Lowe's in the company's pursuit of potential acquisitions of specialty distribution businesses. Lowe's accepted the services of Raymond James and the accompanying benefits.

9. By agreement dated March 23, 2015 (the "Engagement Agreement"), Raymond James and Lowe's agreed that Raymond James would contact certain target entities on Lowe's behalf to determine whether Lowe's and the targeted entities could engage in a business transaction. A copy of the Engagement Agreement is attached as "**Exhibit A**."

10. As consideration for Raymond James's services, Lowe's agreed to pay Raymond James a transaction fee in the amount of $200,000.00 upon the closing of any business transaction. Raymond James also received a right of first refusal to serve as Lowe's investment banking financial advisor in connection with any such business transaction. If Raymond James

exercised its right of first refusal, the transaction fee would be forfeited in lieu of a standard investment banking financial advisory services fee. *See* Ex. A, p. 2 ¶¶ 2(a), (b).

11. Over the following months, Raymond James proceeded to contact the designated target entities as authorized by Lowe's. Raymond James's efforts resulted in several meetings and the execution of confidentiality agreements by certain target entities, as part of an overall increase in understanding and opportunities for Lowe's to explore potential acquisitions of specialty distribution businesses.

12. For example, one of these target entities included Central Wholesalers, Inc. As a result of Raymond James's efforts, Lowe's acquired Central Wholesalers, Inc., in November, 2016. Lowe's paid Raymond James a $200,000.00 transaction fee in connection with the acquisition of Central Wholesalers, Inc.

13. In November, 2015, Lowe's notified Raymond James that Lowe's had entered into direct discussions with another target entity, Maintenance Supply Headquarters, LP ("MSH"). The services that Raymond James was performing for Lowe's included MSH, and Raymond James and Lowe's had discussions about the prospects of a transaction with MSH for Lowe's.

14. The following year, in September 2016, Lowe's informed Raymond James that Lowe's would not engage Raymond James to serve as Lowe's investment banking financial advisor in connection with the acquisition of MSH.

15. Nonetheless, Lowe's offered to pay Raymond James the $200,000.00 transaction fee contemplated under the Engagement Agreement.

16. In May 2017, Lowe's announced its acquisition of MSH.

17. Upon information and belief, Lowe's agreed upon the MSH acquisition within the term of the Engagement Agreement.

18. Lowe's completed its acquisition of MSH in June 2017, at a total transaction value of approximately $512 million.

19. In connection with the MSH acquisition, Lowe's utilized the services of an investment banking financial advisor.

20. Raymond James has engaged the services of the undersigned counsel and is obligated to pay them reasonable fees for their representation in this action.

### Count I:  Breach of the Engagement Agreement

21. Raymond James incorporates paragraphs 1 through 20.

22. Lowe's materially breached the Engagement Agreement by, among other things, failing to honor Raymond James's right of first refusal in connection with Lowe's acquisition of MSH. *See* Ex. A, p. 2 ¶ 2(b).

23. As a result of Lowe's breach of the Engagement Agreement, Raymond James has suffered damages that include, without limitation, the standard investment banking financial advisory services fee Raymond James would have earned in connection with Lowe's acquisition of MSH had Lowe's honored Raymond James's right of first refusal.

24. Raymond James performed its obligations under the Engagement Agreement and all conditions necessary to Raymond James's recover in this lawsuit have been satisfied or waived.

WHEREFORE, Raymond James requests that the Court enter judgment in favor of Raymond James and against Lowe's for damages, costs, attorneys' fees, interest, and other relief as the Court may deem just and appropriate.

## Count II: Breach of the Duty of Good Faith and Fair Dealing

25. Raymond James incorporates paragraphs 1 through 20.

26. Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.

27. Lowe's began direct negotiations with MSH during the term of the Engagement Agreement.

28. Lowe's engaged an investment banking financial advisor in connection with the acquisition of MSH.

29. Lowe's excluded Raymond James from the negotiations with MSH during the term of the Engagement Agreement, failed to inform Raymond James about the nature of its potential business transaction with MSH, and failed to provide Raymond James with the right and option to serve as Lowe's investment banking financial advisor in connection with the MSH transaction.

30. Lowe's breached its duty of good faith and fair dealing under the Engagement Agreement, including its duty to provide Raymond James with the option and right to serve as Lowe's investment banking financial advisor in connection with the MSH transaction. *See* Ex. A, p. 2 ¶¶ 2(a), (b).

31. Lowe's conduct was not commercially reasonable and/or frustrated Raymond James's reasonable expectations to receive the benefits of the Engagement Agreement.

32. As a result of Lowe's breach of its duty of good faith and fair dealing, Raymond James has suffered damages that include, without limitation, the standard investment banking financial advisory services fee Raymond James would have earned in connection with Lowe's

acquisition of MSH had Lowe's not frustrated Raymond James's reasonable expectations under the Engagement Agreement.

WHEREFORE, Raymond James requests that the Court enter judgment in favor of Raymond James and against Lowe's for damages, costs, attorneys' fees, interest, and other relief as the Court may deem just and appropriate.

### Count III:  Unjust Enrichment

33. Raymond James incorporates paragraphs 1 through 3, 5 through 6, 8, 11 through 14, 16, and 18 through 20.

34. The services that Raymond James performed for Lowe's resulted in the enrichment of Lowe's; in particular, through the acquisition of MSH by Lowe's, among other opportunities for Lowe's in the specialty distribution business.

35. Lowe's has failed to fairly compensate Raymond James for its services on behalf of Lowe's, specifically for the acquisition of MSH by Lowe's, all to the detriment of Raymond James.

36. Inequity would result if Lowe's does not compensate Raymond James for its services and the benefits and enrichment that Lowe's received as a result of the services from Raymond James.

WHEREFORE, Raymond James requests that the Court enter judgment in favor of Raymond James and against Lowe's for damages, costs, interest, and other relief as the Court may deem just and appropriate.

Date:  January 3, 2018

Respectfully submitted,

s/ *Dennis P. Waggoner*
Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (FBN 051679)
josh.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
P.O. Box 2231
Tampa, FL  33602
Phone:  (813)221-3900
Facsimile:  (813) 221-2900

Attorneys for Raymond James & Associates, Inc.

10738772v1